**David P. Gardner**
trustee@winstoncashatt.com
250 Northwest Blvd., Ste. 206
Coeur d'Alene, ID 83814
(208) 667-2103
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>AH TWO, LLC<br><br>Debtor. | Case No. 20-20470-NGH<br><br>Chapter 7 |

## MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY

Chapter 7 Trustee David P. Gardner ("Trustee"), pursuant to §363(b) of the Bankruptcy Code, FRBP 2002(a) and 6004, and LBR 2002.1, seeks approval to sell the real property located at:

    **1808 Northwest Blvd. (Lot B), Coeur d'Alene, ID 83814**
    **1808 Northwest Blvd. (Lot C), Coeur d'Alene, ID 83814**
    **1820 Northwest Blvd., Coeur d'Alene, ID 83814**
    **1750 Pinewood Ct., Coeur d'Alene, ID 83814**

(collectively, the "Property"). In support of his request the Trustee submits the following information, under penalty of perjury, and has attached the Commercial & Investment Real Estate Purchase & Sale Agreement and RE-13 Counter-Offer #1 (together, the "PSA") entered into between the Trustee, on behalf of the Estate, and the Buyer (as defined below).

PLEASE TAKE NOTICE THAT the undersigned Trustee will sell the below described property of the above-entitled estate upon approval of the Court.

MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY – PAGE 1

1. **Description of Property to be Sold:** The real property commonly known as:

   **1808 Northwest Blvd. (Lot B), Coeur d'Alene, ID 83814**
   **1808 Northwest Blvd. (Lot C), Coeur d'Alene, ID 83814**
   **1820 Northwest Blvd., Coeur d'Alene, ID 83814**
   **1750 Pinewood Ct., Coeur d'Alene, ID 83814**

2. **Time and Place of Sale:** This sale will be final unless an objection is filed and served as set forth in notice served with this Motion.

3. **Type of Sale:** Private sale to Providence Development, LLC or assigns ("Buyer"). Buyer has no connection to the Debtor or Trustee.

4. **Terms of Sale:** Cash price of $4,850,000.00 on the terms and conditions contained in the attached PSA.

5. **Treatment of Existing Liens:**

   ( ) Sale free and clear of all liens with all valid liens attaching to sale proceeds.
   ( ) Trustee knows of no valid liens claimed against the property.
   (X) Trustee may immediately pay liens listed below without further notice and hearing:

   | | |
   |---|---|
   | Stormy Blue, LLC (POC 3): | $1,353,741.41 |
   | Robert T. Kirkpatrick (POC 5): | $  421,621.17 |
   | Kerry Lease & Assoc. (POC 6): | $1,004,293.71 |
   | Ron & Eileen Sever (POC 7): | $1,180,096.36 |
   | **Total:** | **$3,959,393.19** |

   ( ) The following liens will remain with the property after the sale.

6. **Value of Property to be Sold:**

   The Trustee estimates that the fair market value of the property is $4,850,000.00 based upon:

   ( ) Blue book values of the assets less liens and exemptions.
   ( ) An appraisal by:
   (X) Other: The Property has been marketed and listed by realtors on the MLS. Seven offers were received within the first week or so of the Property's listing. The proposed sale was far and away the highest and best of those offers.

7.  **Proposed Disposition of the Proceeds of the Sale:**

Pending court-approval, the following proceeds of sale will be distributed as follows, without further notice or hearing:

| | |
|---|---|
| Sale Price: | $4,850,000.00 |
| Liens (approx.): | $3,959,393.19 |
| Professional Compensation: | $ 291,000.00 |
| Closing Costs (approx.): | $     3,000.00 |
| Exemptions: | $            0.00 |
| **Remainder to Estate:** | **$ 596,606.81** |

8.  **Authority for Conducting the Sale:**

( ) 11 USC §363(f)(1)
( ) 11 USC §363(f)(2)
( ) 11 USC §363(f)(3)
( ) 11 USC §363(f)(4)
( ) 11 USC §363(f)(5)
(X) Other: 11 USC §363(b)(1)

9.  **Objections to This Notice of Sale:** See Notice of Hearing filed herewith.

10. **Miscellaneous Information:** This sale shall be effective immediately and the 14-day stay imposed by FRBP 6004(h) and other rules are hereby waived.

11. **Additional Terms of Sale:** The property is sold AS-IS-WHERE-IS, without warranty of any nature whatsoever, either express or implied.

12. **Request for Entry of Order:** The Trustee requests that an order be entered authorizing and approving this sale so that the order can be provided to the title company in order to close the sale.

DATED:       December 30, 2021

/s/ David P. Gardner
David P. Gardner, Trustee

DocuSign Envelope ID: A6B6883F-3A4F-4259-AFEB-486985410C00

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED

◆ CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 1 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO

*This has been prepared for submission to your attorney for review and approval prior to signing. No representation is made by licensee as to its sufficiency or tax consequences*

Reference Date: <u>12-16-2021</u>

<u>Providence Development, LLC or assigns</u> ("Buyer") agrees to buy and <u>Ah Two LLC</u> ("Seller") agrees to sell, on the following terms, the commercial real estate and all improvements thereon (collectively, the "Property") commonly known as <u>1820, 1808 Northwest Blvd and 1750 N Pinewood Ct (4 parcels)</u> in the City of <u>Coeur d' Alene</u>, <u>Kootenai</u> County, Idaho, legally described on attached Exhibit A. The Reference Date above is intended to be used to reference this Agreement and is not the date of "Mutual Acceptance," which is defined in Section 23 below.

1. **PURCHASE PRICE.** The purchase price is <u>Four Million Eight Hundred Fifty Thousand Dollars</u> Dollars ($ <u>4,850,000</u> ) payable as follows (check only one):

    ☒ All cash at closing with no financing contingency.

    ☐ All cash at closing contingent on new financing in accordance with the Financing Addendum (attach CBA Form PS-FIN-ID);

    ☐ $ _____ / _____ % of the purchase price in cash at closing with the balance of the purchase price paid as follows **(check one or both, as applicable):**  ☐ Buyer's assumption of the outstanding principal balance as of the Closing Date of a first lien note and deed of trust (or mortgage), or real estate contract, in accordance with the Financing Addendum (attach CBA Form PS-FIN-ID); ☐ Buyer's delivery at closing of a promissory note for the balance of the purchase price, secured by a deed of trust encumbering the Property, in accordance with the Financing Addendum (attach CBA Form PS-FIN-ID).

    ☐ Other: _____

2. **RESPONSIBLE BROKER; EARNEST MONEY.**

    **(a) Responsible Broker.** The responsible broker in this transaction shall be <u>Tony Villelli</u> (the "Responsible Broker").

    **(b) Earnest Money.** The earnest money in the amount of $ <u>100,000</u> shall be in the form of   ☐ Cash ☒ Personal check ☐ Promissory note (attached CBA Form EMN-ID) ☐ Other: _____

    The earnest money shall be held by ☐ Responsible Broker ☒ Closing Agent. Responsible Broker may, however, transfer the earnest money to Closing Agent.

    Buyer shall deliver the earnest money no later than:
    ☒ <u>3</u> days after Mutual Acceptance.
    ☐ On the last day of the Feasibility Period defined in Section 5 below.
    ☐ Other: _____ .

    If the earnest money is to be held by Responsible Broker, it shall be deposited to: ☐ Responsible Broker's non-interest bearing, pooled trust account ☐ A separate, interest-bearing trust account in Responsible Broker's name. The interest, if any, shall be credited at closing to Buyer. If this sale fails to close, whoever is entitled to

INITIALS:  Buyer <u>BK</u>   Date <u>12/16/2021</u>   Seller <u>DPGT</u>   Date <u>12/29/2021 | 2:37 PM CST</u>
Buyer _____   Date _____   Seller _____   Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED

CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 2 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
(CONTINUED)

the earnest money is entitled to any interest earned.

Responsible Broker shall deposit any check to be held by Responsible Broker within 3 days after receipt or Mutual Acceptance, whichever occurs later. Buyer agrees to pay financing and purchase costs incurred by Buyer. Unless otherwise provided in this Agreement, the earnest money shall be applicable to the purchase price.

3. **EXHIBITS AND ADDENDA.** The following Exhibits and Addenda are made a part of this Agreement:

   ☒ Exhibit A - Legal Description
   ☐ Earnest Money Promissory Note, CBA Form EMN-ID
   ☐ Promissory Note
   ☐ FIRPTA Certification, CBA Form 22E
   ☐ Assignment and Assumption, CBA Form PS-AS-ID
   ☐ Addendum/Amendment, CBA Form PSA-ID
   ☐ Back-Up Addendum, CBA Form BUA-ID
   ☐ Vacant Land Addendum, CBA Form VLA
   ☐ Financing Addendum, CBA Form PS-FIN-ID
   ☐ Tenant Estoppel Certificate, CBA Form PS-TEC-ID
   ☐ Defeasance Addendum, CBA Form PS-D-ID
   ☒ Other - Buyer agrees to purchase property "as is."

   <u>- Seller agrees to grant 2 extensions for 30 days each in the event buyer needs more time for feasibility. Buyer will deposit $40,000 into escrow for each extension exercised. These additional deposits, if exercised will be non-refundable but applicable to the purchase price.</u>

   <u>-Seller agrees to pay SVN High Desert Commercial a commission of 3% of the gross sale amount at closing.</u>

4. **SELLER'S UNDERLYING FINANCING.** Unless Buyer is assuming Seller's underlying financing, Seller shall be responsible for confirming the existing underlying financing is not subject to any "lock out" or similar covenant which would prevent the lender's lien from being released at closing. In addition, Seller shall provide Buyer notice prior to the end of the Feasibility Period if Seller is required to substitute securities for the Property as collateral for the underlying financing (known as "defeasance"). If Seller provides this notice of defeasance to Buyer, then the parties shall close the transaction in accordance with the process described in CBA Form PS-D-ID or any different process identified in Seller's defeasance notice to Buyer.

5. **FEASIBILITY CONTINGENCY.** Buyer's obligations under this Agreement are conditioned upon Buyer's satisfaction in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition; the presence of or absence of any hazardous substances; the contracts and leases affecting the property; the potential financial performance of the Property; the availability of government permits and approvals; and the feasibility of the Property for Buyer's intended purpose. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives written notice to Seller within <u>60</u> days (30 days if not filled in) (the "Feasibility Period") of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, the feasibility contingency stated in this Section 5 shall be deemed to be satisfied.

   a. **Books, Records, Leases, Agreements.** Seller shall make available for inspection by Buyer and its agents within <u>2</u> days (2 days if not filled in) after Mutual Acceptance all documents in Seller's possession

12/29/2021 | 2:37 PM CST

INITIALS: Buyer __BK__ Date __12/16/2021__ Seller __DPGT__ Date _____
Buyer _____ Date _____ Seller _____ Date _____

SVN High Desert Commercial
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED

CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 3 of 16

**COMMERCIAL & INVESTMENT REAL ESTATE
PURCHASE & SALE AGREEMENT
IDAHO
(CONTINUED)**

or control relating to the ownership, operation, renovation or development of the Property, excluding appraisals or other statements of value, and including: statements for real estate taxes, assessments, and utilities for the last three years and year to date; property management agreements and any other agreements with professionals or consultants; leases or other agreements relating to occupancy of all or a portion of the Property and a suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees; plans,specifications, permits, applications, drawings, surveys, and studies; maintenance records, accounting records and audit reports for the last three years and year to date; and "Vendor Contracts" which shall include maintenance or service contracts, and installments purchase contracts or leases of personal property or fixtures used in connection with the Property. Buyer shall determine within the Feasibility Period: (i) whether Seller will agree to terminate any objectionable Vendor Contracts; and (ii) whether Seller will agree to pay any damages or penalties resulting from the termination of objectionable Vendor Contracts. Buyer's waiver of the Feasibility Contingency shall be deemed Buyer's acceptance of all Vendor Contracts which Seller has not agreed in writing to terminate. Buyer shall be solely responsible for obtaining any required consents to such assumption and the payment of any assumption fees. Seller shall cooperate with Buyer's efforts to receive any such consents but shall not be required to incur any out-of-pocket expenses or liability in doing so. Seller shall transfer the Vendor Contracts as provided in Section 17 of this Agreement.

b. **Access.** Seller shall permit Buyer and its agents, at Buyer's sole expense and risk, to enter the Property at reasonable times, subject to the rights of and after legal notice to tenants, to conduct inspections concerning the Property and improvements, including without limitation: the structural condition of improvements, hazardous materials, pest infestation, soils conditions, sensitive areas, wetlands, or other matters affecting the feasibility of the Property for Buyer's intended use. Buyer shall schedule any entry onto the Property with Seller in advance and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and disruption of Seller's tenants. Buyer shall not perform any invasive testing including environmental inspections beyond a phase I assessment or contact the tenants or property management personnel without obtaining the Seller's prior written consent, which shall not be unreasonably withheld. Buyer shall restore the Property and improvements to the same condition they were in prior to inspection. Buyer shall be solely responsible for all costs of its inspections and feasibility analysis and has no authority to bind the Property for purposes of statutory liens. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including attorneys' and experts' fees, arising from or relating to entry onto or inspection of the Property by Buyer and its agents. This agreement to indemnify and defend Seller shall survive closing. Buyer may continue to enter the Property in accordance with the foregoing terms and conditions after removal or satisfaction of the feasibility contingency only for the purpose of leasing or to satisfy conditions of financing.

6. **TITLE INSURANCE.**

    a. **Title Report.** Seller authorizes Buyer, its Lender, Listing Agent, Selling Licensee or Closing Agent, at Seller's expense, to apply for and deliver to Buyer a ☒ standard ☐ extended (standard, if not completed)coverage owner's policy of title insurance. If an extended coverage owner's policy is specified, Buyer shall pay the increased costs associated with that policy including the excess premium over that charged for a standard coverage policy, and the cost of any survey required by the title insurer. The title report shall be issued by <u>Kootenai Title</u> (Seller's choice, if not completed).

    b. **Permitted Exceptions.** Buyer shall notify Seller of any objectionable matters in the title report or any supplemental report within the earlier of: (1) twenty (20) days after Mutual Acceptance of this Agreement;

INITIALS: Buyer __BK__ Date __12/16/2021__ Seller __DPGT__ Date __12/29/2021 | 2:37 PM CST__
Buyer _____ Date _____ Seller _____ Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED

CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 4 of 16

**COMMERCIAL & INVESTMENT REAL ESTATE
PURCHASE & SALE AGREEMENT
IDAHO
(CONTINUED)**

or (2) the expiration of the Feasibility Period. This Agreement shall terminate and Buyer shall receive a refund of the earnest money, less any costs advanced or committed for Buyer, unless within five (5) days of Buyer's notice of such objections (1) Seller agrees, in writing, to remove all objectionable provisions or (2) Buyer notifies Seller that Buyer waives any objections which Seller does not agree to remove. If any new title matters are disclosed in a supplemental title report, then the preceding termination, objection and waiver provisions shall apply to the new title matters except that Buyer's notice of objections must be delivered within five (5) days of delivery of the supplemental report and Seller's response or Buyer's waiver must be delivered within two (2) days of Buyer's notice of objections. The closing date shall be extended to the extent necessary to permit time for these notices. Buyer shall not be required to object to any mortgage or deed of trust liens, or the statutory lien for real property taxes, and the same shall not be deemed to be Permitted Exceptions; provided, however, that the lien securing any financing which Buyer has agreed to assume shall be a Permitted Exception. Except for the foregoing, those provisions not objected to or for which Buyer waived its objections shall be referred to collectively as the "Permitted Exceptions." Seller shall cooperate with Buyer and the title company to clear objectionable title matters but shall not be required to incur any out-of-pocket expenses or liability other than payment of monetary encumbrances not assumed by Buyer and proration of real property taxes, and Seller shall provide an owner's affidavit containing the information and reasonable covenants requested by the title company. The title policy shall contain no exceptions other than the General Exclusions and Exceptions common to such form of policy and the Permitted Exceptions.

7. **CLOSING OF SALE.** The sale shall be closed on <u>or before 30 days after the end of the feasibility period</u>, ("Closing") by <u>Kootenai Title</u> ("Closing Agent") (Seller shall select the Closing Agent, if not completed). Buyer and Seller shall deposit with Closing Agent by 12:00 p.m. on the scheduled Closing date all instruments and monies required to complete the purchase in accordance with this Agreement. "Closing" shall be deemed to have occurred when the deed is recorded and the sale proceeds are available to Seller. Time is of the essence in the performance of this Agreement. Sale proceeds shall be considered available to Seller, even though they cannot be disbursed to Seller until the next business day after Closing. Notwithstanding the foregoing, if Seller informed Buyer during the Feasibility Period that Seller's underlying financing requires that it be defeased and may not be paid off, then Closing shall be conducted in accordance with the three-day closing process described in CBA Form PS-D-ID. This Agreement is intended to constitute escrow instructions to Closing Agent. Buyer and Seller will provide any supplemental instructions requested by Closing Agent provided the same are consistent with this Agreement.

8. **CLOSING COSTS AND PRORATIONS.** Seller shall deliver an updated rent roll to Closing Agent not later than two (2) days before the scheduled Closing date in the form required by Section 5(a) and any other information reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for Closing. Seller certifies that the information contained in the rent roll is correct as of the date submitted. Seller shall pay the premium for the owner's standard coverage title policy. Buyer shall pay the excess premium attributable to any extended coverage or endorsements requested by Buyer, and the cost of any survey required in connection with the same. Seller and Buyer shall each pay one-half of the escrow fees. Any real estate excise taxes shall be paid by the party who bears primary responsibility for payment under the applicable statute or code. Real and personal property taxes and assessments payable in the year of closing; collected rents on any existing tenancies; interest; utilities; and other operating expenses shall be pro-rated as of Closing. If tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rate those expenses paid by Seller. Buyer shall pay to Seller at Closing an additional sum equal to any utility deposits or mortgage reserves for assumed financing for which Buyer receives the benefit after Closing. Buyer shall pay all costs of financing including the premium for the lender's title policy. The real estate commission is due on

INITIALS: Buyer **BK** Date **12/16/2021** Seller **DPGT** Date **12/29/2021 | 2:37 PM CST**
Buyer _____ Date _____ Seller _____ Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED



Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 5 of 16

**COMMERCIAL & INVESTMENT REAL ESTATE**
**PURCHASE & SALE AGREEMENT**
**IDAHO**
(CONTINUED)

Closing or upon Seller's default under this Agreement, whichever occurs first, and neither the amount nor due date thereof can be changed without Listing Agent's written consent. If the Property was taxed under a deferred classification prior to Closing, then Seller shall pay all taxes, interest, penalties, deferred taxes or similar items which result from removal of the Property from the deferred classification. At Closing, all refundable deposits on tenancies shall be credited to Buyer or delivered to Buyer for deposit in a trust account if required by state or local law. Buyer shall pay any sales or use tax applicable to the transfer of personal property included in the sale.

9. **POST-CLOSING ADJUSTMENTS, COLLECTIONS, AND PAYMENTS.** After Closing, Buyer and Seller shall reconcile the actual amount of revenues or liabilities upon receipt or payment thereof to the extent those items were prorated or credited at Closing based upon estimates. Any bills or invoices received by Buyer after Closing which relate to services rendered or goods delivered to the Seller or the Property prior to Closing shall be paid by Seller upon presentation of such bill or invoice. At Buyer's option, Buyer may pay such bill or invoice and be reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date of Buyer's written demand to Seller for reimbursement until such reimbursement is made. Notwithstanding the foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the actual amount of those expenses, then Buyer shall be entitled to any surplus and shall be liable for any credit resulting from the reconciliation. Rents collected from each tenant after Closing shall be applied first to rentals due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit of Seller for delinquent rentals owed for a period prior to closing. The amounts applied for the benefit of Seller shall be turned over by Buyer to Seller promptly after receipt. Seller shall be entitled to pursue any lawful methods of collection of delinquent rents but shall have no right to evict tenants after Closing.

10. **OPERATIONS PRIOR TO CLOSING.** Prior to Closing, Seller shall continue to operate the Property in the ordinary course of its business and maintain the Property in the same or better condition than as existing on the date of Mutual Acceptance but shall not be required to repair material damage from casualty except as otherwise provided in this Agreement. After the Feasibility Period, Seller shall not enter into or modify existing rental agreements or leases (except that Seller may enter into, modify, extend, renew or terminate residential rental agreements or residential leases in the ordinary course of its business), service contracts, or other agreements affecting the Property which have terms extending beyond Closing without first obtaining Buyer's consent, which shall not be unreasonably withheld.

11. **POSSESSION.** Buyer shall be entitled to possession ☒ on closing ☐ _____ (on closing, if not completed). Buyer shall accept possession subject to all tenancies disclosed to Buyer during the Feasibility Period.

12. **SELLER'S REPRESENTATIONS.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver of the feasibility contingency stated in Section 5 above, including in the books, records and documents made available to Buyer, or in the title report or any supplemental report or documents referenced therein, Seller represents to Buyer that, to the best of Seller's actual knowledge, each of the following is true as of the date hereof: (a) Seller is authorized to enter into the Agreement, to sell the Property, and to perform its obligations under the Agreement; (b) The books, records, leases, agreements and other items delivered to Buyer pursuant to this Agreement comprise all material documents in Seller's possession or control regarding the operation and condition of the Property; (c) Seller has not received any written notices that the Property or the business conducted thereon violate any applicable laws, regulations, codes and ordinances; (d) Seller has all certificates of occupancy, permits, and other governmental consents necessary to own and operate the Property for its current use; (e) There is no pending or threatened litigation which would adversely affect

INITIALS: Buyer __BK__ Date __12/16/2021__ Seller __DPGT__ Date __12/29/2021 | 2:37 PM CST__
Buyer _____ Date _____ Seller _____ Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED
CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 6 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
## (CONTINUED)

the Property or Buyer's ownership thereof after Closing; (f) There is no pending or threatened condemnation or similar proceedings affecting the Property, and the Property is not within the boundaries of any planned or authorized local improvement district; (g) Seller has paid (except to the extent prorated at Closing) all local, state and federal taxes (other than real and personal property taxes and assessments described in Section 8 above) attributable to the period prior to closing which, if not paid, could constitute a lien on Property (including any personal property), or for which Buyer may be held liable after Closing; (h) Seller is not aware of any concealed material defects in the Property except as disclosed to Buyer in writing during the Feasibility Period; (i) There are no Hazardous Substances (as defined below) currently located in, on, or under the Property in a manner or quantity that presently violates any Environmental Law (as defined below); there are no underground storage tanks located on the Property; and there is no pending or threatened investigation or remedial action by any governmental agency regarding the release of Hazardous Substances or the violation of Environmental Law at the Property. As used herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or suspected harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances" specifically includes, but is not limited to petroleum, petroleum by-products, and asbestos.

If prior to Closing Seller or Buyer discovers any information which would cause any of the representations above to be false if the same were deemed made as of the date of such discovery, then the party discovering the same shall promptly notify the other party in writing. If the newly-discovered information will result in costs or liability to Buyer in excess of the lesser of $100,000 or five percent (5%) of the purchase price stated in this Agreement, or will materially adversely affect Buyer's intended use of the Property, then Buyer shall have the right to terminate the Agreement and receive a refund of its earnest money. Buyer shall give notice of termination within five (5) days of discovering or receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its remedies against Seller if Seller had actual knowledge of the newly-discovered information such that a representation provided for above was false.

13. **AS-IS.** Except for those representations and warranties specifically included in this Agreement: (i) Seller makes no representations or warranties regarding the Property; (ii) Seller hereby disclaims, and Buyer hereby waives, any and all representations or warranties of any kind, express or implied, concerning the Property or any portion thereof, as to its condition, value, compliance with laws, status of permits or approvals, existence or absence of hazardous material on site, occupancy rate or any other matter of similar or dissimilar nature relating in any way to the Property, including the warranties of fitness for a particular purpose, tenantability, habitability and use; (iii) Buyer otherwise takes the Property "AS IS;" and (iv) Buyer represents and warrants to Seller that Buyer has sufficient experience and expertise such that it is reasonable for Buyer to rely on its own pre-closing inspections and investigations.

14. **PERSONAL PROPERTY.**

    a. This sale includes all right, title and interest of Seller to the following tangible personal property: ☒ None
    ☐ That portion of the personal property located on and used in connection with the Property, which Seller will itemize in an Exhibit to be attached to this Agreement within ten (10) days of Mutual Acceptance (None, if not completed). The value assigned to the personal property shall be $ _____ (if not completed, the County-assessed value if available and, if not available, the fair market value determined by an appraiser selected by the Listing Agent and Selling Licensee). Seller warrants title to, but not the condition of, the personal property and shall convey it by bill of sale.

INITIALS: Buyer __BK__ Date __12/16/2021__ Seller __DPGT__ Date __12/29/2021 | 2:37 PM CST__
Buyer _____ Date _____ Seller _____ Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED
CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 7 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
(CONTINUED)

b. In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) above, this sale includes all right, title and interest of Seller to the following intangible property now or hereafter existing with respect to the Property including, without limitation: all rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers, architects, consultants or other parties associated with the Property; all utility, security and other deposits and reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone numbers for the Property and related trademarks, service marks or trade dress; and guaranties, warranties or other assurances of performance received.

15. **CONDEMNATION AND CASUALTY.** Seller bears all risk of loss until Closing, and thereafter Buyer shall bear the risk of loss. Buyer may terminate this Agreement and obtain a refund of the earnest money if improvements on the Property are destroyed or materially damaged by casualty before Closing, or if condemnation proceedings are commenced against all or a portion of the Property before Closing. Damage will be considered material if the cost of repair exceeds the lesser of $100,000 or five percent (5%) of the purchase price stated in this Agreement. Alternatively, Buyer may elect to proceed with closing, in which case, at Closing, Seller shall assign to Buyer all claims and right to proceeds under any property insurance policy and shall credit to Buyer at Closing the amount of any deductible provided for in the policy.

16. **FIRPTA - TAX WITHHOLDING AT CLOSING.** Closing Agent is instructed to prepare a certification (CBA or NWMLS Form 22E, or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign Investment in Real Property Tax Act, and Seller shall sign it on or before Closing. If Seller is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

17. **CONVEYANCE.** Title shall be conveyed by a Statutory Warranty Deed subject only to the Permitted Exceptions. If this Agreement is for conveyance of Seller's vendee's interest in a Real Estate Contract, the Statutory Warranty Deed shall include a contract vendee's assignment sufficient to convey after acquired title. At Closing, Seller and Buyer shall execute and deliver to Closing Agent CBA Form No. PS-AS-ID Assignment and Assumption Agreement transferring all leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) and all intangible property transferred pursuant to Section 14(b).

18. **NOTICES AND COMPUTATION OF TIME.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and must be delivered to Seller and Listing Agent with a courtesy copy to any other party identified as a recipient of notices in Section 28 of this Agreement. A notice to Seller shall be deemed delivered only when received by Seller, Listing Agent, or the licensed office of Listing Agent. Notices to Buyer must be signed by at least one Seller and must be delivered to Buyer, with a copy to Selling Licensee and with a courtesy copy to any other party identified as a recipient of notices in Section 28 of this Agreement. A notice to Buyer shall be deemed delivered only when received by Buyer, Selling Licensee, or the licensed office of Selling Licensee. Selling Licensee and Listing Agent have no responsibility to advise of receipt of a notice beyond either phoning the represented party or causing a copy of the notice to be delivered to the party's address provided in this Agreement. Buyer and Seller shall keep Selling Licensee and

INITIALS: Buyer  BK   Date 12/16/2021   Seller  DPGT   Date 12/29/2021 | 2:37 PM CST
Buyer _____ Date _____ Seller _____ Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED 

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 8 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
(CONTINUED)

Listing Agent advised of their whereabouts in order to receive prompt notification of receipt of a notice. If any party is not represented by a licensee, then notices must be delivered to and shall be effective when received by that party at the address, fax number, or email indicated in Section 28 of this Agreement.

Unless otherwise specified in this Agreement, any period of time in this Agreement shall mean Pacific Time and shall begin the day after the event starting the period and shall expire at 5:00 p.m. of the last calendar day of the specified period of time, unless the last day is a Saturday, Sunday or legal holiday as defined in Section 73-108, Idaho Code, in which case the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays. Notwithstanding the foregoing, references to specific dates or times or number of hours shall mean those dates, times or number of hours; provided, however, that if the Closing Date falls on a Saturday, Sunday, or legal holiday as defined in Section 73-108, Idaho Code, or a date when the county recording office is closed, then the Closing Date shall be the next regular business day.

19. **REPRESENTATION CONFIRMATION; LIMITED DUAL AGENCY.**
    a. Representation Confirmation. Check one (1) box in Section 1 below and one (1) box in Section 2 below to confirm that in this transaction, the brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).

    Section 1:
    ☒ The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).
    ☐ The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.
    ☐ The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), and has an ASSIGNED AGENT acting solely on behalf of the BUYER(S).
    ☐ The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).

    Section 2:
    ☒ The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).
    ☐ The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.
    ☐ The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), and has an ASSIGNED AGENT acting solely on behalf of the SELLER(S).
    ☐ The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).

    Each party signing this document confirms that the party has received, read and understood the Idaho Agency Disclosure Brochure adopted or approved by the Idaho real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy was made available for inspection and review. EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A BROKERAGE UNLESS THERE IS ALSO A SEPARATE, SIGNED, WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.

    b. **Limited Dual Agency and Assigned Agency.** The parties have received, read and understand the Idaho Real Estate Commission's "Agency Disclosure Brochure." The parties understand that Broker may provide agency representation to both Seller and Buyer. The parties understand that, as an agent for both Buyer/client and Seller/client, Broker will be a limited dual agent of each client and cannot advocate on behalf of one client over another, and cannot legally disclose to either client certain confidential client

INITIALS: Buyer __BK__ Date _12/16/2021_ Seller _DPGT_ Date _12/29/2021 | 2:37 PM CST_
Buyer _____ Date _____ Seller _____ Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED 

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 9 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
(CONTINUED)

information concerning price negotiations, terms or factors motivating the Buyer/client to buy or the Seller/client to sell without specific written permission of the client to whom the information pertains. The specific duties, obligations and limitations of a limited dual agent are contained in the Agency Disclosure Brochure as required by Section 54-2085, Idaho Code. The parties understand that a limited dual agent does not have a duty of undivided loyalty to either client.

The parties further acknowledge that, to the extent Broker offers assigned agency as a type of agency representation, individual sales associates may be assigned to represent each client to act solely on behalf of the client consistent with applicable duties set forth in Section 54-2087, Idaho Code. In an assigned agency situation, the designated broker (the broker who supervises the sales associates) will remain a limited dual agent of the client and shall have the duty to supervise the assigned agents in the fulfillment of their duties to their respective clients, to refrain from advocating on behalf of any one client over another, and to refrain from disclosing or using, without permission, confidential information of any other client with whom the brokerage has an agency relationship.

☒ Both parties are represented in this transaction by separate brokers, and limited dual agency and assigned agency are not applicable in this transaction.
☐ Broker **may** act as a Limited Dual Agent and may, in Broker's discretion, assign individual agents to represent Seller and potential buyers of the Property.
☐ Broker **may not** act as a Limited Dual Agent.

_DPGT_ / _____
[Seller's Initials]

_BK_____ / _____
[Buyer's Initials]

20. **ASSIGNMENT.** Buyer ☒ may  ☐ may not (may not, if not completed) assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless provided otherwise herein. If the "may not" option is selected and the words "and/or assigns" or similar words are used to identify the Buyer, then this Agreement may be assigned with notice to Seller but without Seller's consent only to an entity which is controlled by or under common control with the Buyer identified in this Agreement. Any other assignment requires Seller's consent. The party identified as the initial Buyer shall remain responsible for those obligations of Buyer stated in this Agreement notwithstanding any assignment and, if this Agreement provides for Seller to finance a portion of the purchase price, then the party identified as the initial Buyer shall guarantee payment of the Seller financing.

21. **DEFAULT AND ATTORNEY'S FEE.**

   a. **Buyer's default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then (**check one**):

   ☒ Seller may terminate this Agreement and keep the earnest money as liquidated damages as the sole and exclusive remedy available to Seller for such failure; or

   ☐ Seller may, at its option, (a) terminate this Agreement and keep as liquidated damages the earnest money as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for

INITIALS:  Buyer _BK_____  Date _12/16/2021_  Seller _DPGT_____  Date _12/29/2021 | 2:37 PM CST_
           Buyer _____  Date _____  Seller _____  Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED

CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 10 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
(CONTINUED)

Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

b. **Seller's default.** In the event Seller fails, without legal excuse, to complete the sale of the Property, then (**check one**):

☒ As Buyer's sole remedy, Buyer may either (a) terminate this Agreement and recover all earnest money or fees paid by Buyer whether or not the same are identified as refundable or applicable to the purchase price; or (b) bring suit to specifically enforce this Agreement and recover incidental damages; provided, however, Buyer must file suit within sixty (60) days from the scheduled date of closing or from the date Seller has informed Buyer in writing that Seller will not proceed with closing, whichever is earlier; or

☐ Buyer may, at its option, (a) bring suit against Seller for Buyer's actual damages, (b) bring suit to specifically enforce this Agreement and recover any incidental damages, or (c) pursue any other rights or remedies available at law or equity.

Neither Buyer nor Seller may recover consequential damages such as lost profits. If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses. In the event of trial, the amount of the attorney's fee shall be fixed by the court. The venue of any suit shall be the county in which the Property is located, and this Agreement shall be governed by the laws of the state where the Property is located.

22. **MISCELLANEOUS PROVISIONS.**

   a. **Complete Agreement.** The Agreement and any addenda and exhibits thereto state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which modify or affect the Agreement.

   b. **Counterpart Signatures.** The Agreement may be signed in counterpart, each signed counterpart shall be deemed an original, and all counterparts together shall constitute one and the same agreement.

   c. **Electronic Delivery.** Electronic delivery of documents (e.g., transmission by facsimile or email) including signed offers or counteroffers and notices shall be legally sufficient to bind the party the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will replace electronically delivered offers or counteroffers with original documents.

   d. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to Closing. Notwithstanding Section 20 above, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purposes of completing a reverse exchange.

23. **ACCEPTANCE; COUNTEROFFERS.** Seller has until ~~midnight of~~ 5pm PST 12-17-2021 (date) ~~(if not filled in, the third business day) following the day Buyer delivers the offer~~ to accept this offer, unless sooner withdrawn. If this offer is not timely accepted, it shall lapse and the earnest money shall be refunded to   BK   DS

INITIALS:  Buyer  BK  Date  12/16/2021   Seller  DPGT  Date  12/29/2021 | 2:37 PM CST
                Buyer _____  Date _____   Seller _____  Date _____

SVN High Desert Commercial
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED
CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 11 of 16

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## IDAHO
(CONTINUED)

Buyer. If either party makes a future counteroffer, the other party shall have until 5:00 p.m. on the <u>2nd</u> business day (if not filled in, the second business day) following receipt to accept the counteroffer, unless sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the earnest money shall be refunded to the Buyer. No acceptance, offer or counteroffer from the Buyer is effective until a signed copy is received by the Seller, the Listing Agent or the licensed office of the Listing Agent. No acceptance, offer or counteroffer from the Seller is effective until a signed copy is received by the Buyer, the Selling Licensee or the licensed office of the Selling Licensee. "Mutual Acceptance" shall occur when the last counteroffer is signed by the offeree, and the fully-signed counteroffer has been received by the offeror, his or her licensee, or the licensed office of the licensee. If any party is not represented by a licensee, then notices must be delivered to and shall be effective when received by that party.

24. **INFORMATION TRANSFER**. In the event this Agreement is terminated, Buyer agrees to deliver to Seller within ten (10) days of Seller's written request copies of all materials received from Seller and any non-privileged plans, studies, reports, inspections, appraisals, surveys, drawings, permits, applications or other development work product relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

25. **CONFIDENTIALITY.** Until and unless closing has been consummated, Buyer and Seller shall follow reasonable measures to prevent unnecessary disclosure of information obtained in connection with the negotiation and performance of this Agreement. Neither party shall use or knowingly permit the use of any such information in any manner detrimental to the other party.

26. **CUSTOMER COMPENSATION AGREEMENT.** THIS PROVISION SHALL APPLY ONLY IN THE EVENT THAT THE BROKERAGE WORKING WITH THE SELLER IS A NON-AGENT, AND, THEREFORE, THE SELLER REMAINS A CUSTOMER AND NOT A CLIENT. IF SELLER IS A CLIENT, THE BROKERAGE AND SELLER MUST ENTER INTO A SEPARATE, SIGNED, WRITTEN AGREEMENT FOR AGENCY REPRESENTATION THAT ADDRESSES COMPENSATION OF THE BROKERAGE. Seller should review the Representation Confirmation provision in Section 19 of this Agreement as well as the Agency Disclosure Brochure for additional information.

Seller agrees to pay a commission of <u>6</u> % of the sales price or $ _____ The commission amount stated shall be apportioned between Seller's Brokerage and Buyer's Brokerage in a separate agreement between them. If there is no separate agreement between them, then Seller's Brokerage shall pay to Buyer's Brokerage a commission of <u>6</u> % of the sales price or $ _____ . Seller assigns to Seller's Brokerage and Buyer's Brokerage a portion of the sales proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced or committed by Seller's Brokerage or Buyer's Brokerage for Buyer or Seller shall be reimbursed or paid therefrom, and the balance shall be paid one-half to Seller and one-half to Seller's Brokerage and Buyer's Brokerage. In any action by Seller's Brokerage or Buyer's Brokerage to enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. Neither Seller's Brokerage nor Buyer's Brokerage are receiving compensation from more than one party to this transaction unless disclosed on an attached addendum, in which case Buyer and Seller consent to such compensation. The Property described in attached Exhibit A, is commercial real estate. Notwithstanding Section 25 above, the pages containing this Section, the parties' signatures and an attachment describing the Property may be recorded.

27. **LISTING AGENT AND SELLING LICENSEE DISCLOSURE.** EXCEPT AS OTHERWISE DISCLOSED IN WRITING TO BUYER OR SELLER, THE SELLING LICENSEE, LISTING AGENT, AND BROKERS HAVE

INITIALS:  Buyer __BK__  Date __12/16/2021__  Seller __DPGT__  Date __12/29/2021 | 2:37 PM CST__
          Buyer _____  Date _____  Seller _____  Date _____

DocuSign Envelope ID: A6B6883F-3A4F-4259-AFEB-486985F410C00

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED 

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 12 of 16

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
## IDAHO
(CONTINUED)

NOT MADE ANY REPRESENTATIONS OR WARRANTIES OR CONDUCTED ANY INDEPENDENT INVESTIGATION CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT; BUYER'S OR SELLER'S FINANCIAL STRENGTH; BOOKS, RECORDS, REPORTS, STUDIES, OR OPERATING STATEMENTS; THE CONDITION OF THE PROPERTY OR ITS IMPROVEMENTS; THE FITNESS OF THE PROPERTY FOR BUYER'S INTENDED USE; OR OTHER MATTERS RELATING TO THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PROPERTY'S ZONING, BOUNDARIES, AREA, COMPLIANCE WITH APPLICABLE LAWS (INCLUDING LAWS REGARDING ACCESSIBILITY FOR DISABLED PERSONS), OR HAZARDOUS OR TOXIC MATERIALS INCLUDING MOLD OR OTHER ALLERGENS. SELLER AND BUYER ARE EACH ADVISED TO ENGAGE QUALIFIED EXPERTS TO ASSIST WITH THESE DUE DILIGENCE AND FEASIBILITY MATTERS, AND ARE FURTHER ADVISED TO SEEK INDEPENDENT LEGAL AND TAX ADVICE RELATED TO THIS AGREEMENT.

INITIALS: Buyer __BK__ Date __12/16/2021__ Seller __DPGT__ Date __12/29/2021 | 2:37 PM CST__
Buyer _____ Date _____ Seller _____ Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED 

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 13 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
(CONTINUED)

28. **IDENTIFICATION OF THE PARTIES.** The following is the contact information for the parties involved in this Agreement:

**Buyer**

**Contact:** Providence Development, LLC or assigns
**Address:** 529 E Main St
Bozeman, MT 59715
**Business Phone:** _____
**Mobile Phone:** _____
**Fax:** _____
**Email:** _____

**Seller**  David P. Gardner, Chapter 7 Trustee
ID BK #20-20470
250 nNorthwest Blvd. Ste 206
Coeurd'Alene, ID 83814

**Contact:** ~~Ah Two LLC~~   BK
**Address:** ~~9999 N Hess St #904~~
~~Hayden, ID 83835~~
**Business Phone:** _____
**Mobile Phone:** _____
**Fax:** _____
**Email:** _____

[Seller signature: DpGt]

**Selling Firm**

**Name:** SVN High Desert Commercial
**Assumed Name: (if applicable)** _____
**Selling Broker:** Taylor Gibbons
**Address:** 700 S Woodruff Ave
Idaho Falls, ID 83401
**Business Phone:** _____
**Mobile Phone:** _____
**Email:** _____
**Fax:** _____
**CBA Office No.:** _____

**Listing Firm**

**Name:** Keller Williams Realty Coeur d'Alene
**Assumed Name: (if applicable)** _____
**Listing Broker:** Tony Villelli and Kaye Mounsey   BK
**Address:** ~~523 E. Front Ave~~   3931 N. Schreiber Way
~~Coeur d'Alene, ID 83814~~   83815
**Business Phone:** _____
**Mobile Phone:** _____
**Email:** _____
**Fax:** _____
**CBA Office No.:** _____

[Listing Firm signature: DpGt]

**Licensed Office of the Selling Broker**

**Address:** 700 S Woodruff Ave
Idaho Falls, ID 83401
**Business Phone:** _____
**Email:** _____
**Fax:** _____
**CBA Office No.:** _____

**Licensed Office of the Listing Broker**

**Address:** ~~523 E. Front Ave~~   3931 N. Schreiber Way
~~Coeur d'Alene, ID 83814~~   Coeur d'Alene, ID 83815   BK
**Business Phone:** _____
**Email:** Idahorealty@me.com
**Fax:** _____
**CBA Office No.:** _____

[Signature: DpGt]

**Courtesy Copy of Notices to Buyer to:**

**Courtesy Copy of Notices to Seller to:**

INITIALS:   Buyer   BK    Date 12/16/2021    Seller [DpGt]   Date 12/29/2021 | 2:37 PM CST
Buyer _____   Date _____   Seller _____   Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED 

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 14 of 16

# COMMERCIAL & INVESTMENT REAL ESTATE
# PURCHASE & SALE AGREEMENT
# IDAHO
## (CONTINUED)

Name: _____        Name: _____
Address: _____        Address: _____
_____        _____
Business Phone: _____        Business Phone: _____
Fax: _____        Fax: _____
Mobile Phone: _____        Mobile Phone: _____
Email: _____        Email: _____


IN WITNESS WHEREOF, the parties have signed this Agreement intending to be bound.

Buyer _____Bryan Klein_____        Buyer _____
          Printed name and type of entity                      Printed name and type of entity

Buyer __*Bryan Klein*____Owner/CEO_____        Buyer _____
          Signature and title                                  Signature and title

Date signed _____12/16/2021_____        Date signed _____

Seller __David P. Gardner, Chapter 7_____        Seller _____
        BK Trustee 20-20470
          Printed name and type of entity                      Printed name and type of entity

Seller __*David P. Gardner Trustee*_____        Seller _____
        F6249190A8B449B...
          Signature and title                                  Signature and title

Date signed ____12/29/2021 | 2:37 PM CST____        Date signed _____


INITIALS:   Buyer __BK__  Date __12/16/2021__   Seller __DPG†__  Date __12/29/2021 | 2:37 PM CST__
            Buyer _____  Date _____   Seller _____  Date _____

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED

CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--
Idaho
Rev. 10/2010
Page 15 of 16

**COMMERCIAL & INVESTMENT REAL ESTATE**
**PURCHASE & SALE AGREEMENT**
**IDAHO**
(CONTINUED)

**EXHIBIT A \***
[Legal Description]

Address: 1820 Northwest Blvd, Coeur D Alene, ID 83814
Parcel # C2565015011A
Legal Description: East Lacrosse, Tax#18804 In Lts 11 & 12 Blk 15 Ex N 5 Ft (Rw) Ex Rw Urd Lake District 1997 11 50N 04W

Address: 1808 Northwest Blvd, Coeur D Alene, ID 83814
Parcel # C2565015012B
Legal Description: East Lacrosse, Tax#18805 In Lts 11 & 12 Blk 15 Ex Rw Ex N 5 Ft (Rw) Urd Lake District 1997 11 50N 04W

Address: 1808 Northwest Blvd, Coeur D Alene, ID 83814
Parcel # C2565015013C
Legal Description: East Lacrosse, W 103 Ft-S2-Lt 13 Ex S 62 Ft, N2-Lt 13, W 50 Ft-N2-Lt 14 Blk 15 Ex N 5 Ft (Rw), Ptn Vac St Urd Lake District 1997 11 50N 04W

Address: 1750 N Pinewood Ct, Coeur D Alene, ID 83814
Parcel # C2565015015A
Legal Description: East Lacrosse, Tax#21002 [In Lts 14, 15 & 16 Blk 15] Urd Lake District 1997 1150N04w

INITIALS: Buyer __BK__ Date __12/16/2021__ Seller __DPGT__ Date __12/29/2021 | 2:37 PM CST__
Buyer _____ Date _____ Seller _____ Date _____

DocuSign Envelope ID: A6B6883F-3A4F-4259-AFEB-486985F410C00

**SVN High Desert Commercial**
700 S. Woodruff Ave.
Idaho Falls, ID 83401
Phone: 208-535-8520
Fax: 208-535-0380

© Commercial Brokers Association
ALL RIGHTS RESERVED

CBA

Form: PS-1A-ID
Commercial & Investment
Purchase & Sale Agreement--Idaho
Rev. 10/2010
Page 16 of 16

**COMMERCIAL & INVESTMENT REAL ESTATE
PURCHASE & SALE AGREEMENT
IDAHO
(CONTINUED)**

\* To ensure accuracy in the legal description, consider substituting the legal description contained in the preliminary commitment for title insurance or a copy of the Property's last vesting deed for this page. Do not neglect to label the substitution "Exhibit A." You should avoid transcribing the legal description because any error in transcription may render the legal description inaccurate and this Agreement unenforceable.

INITIALS:  Buyer __BK__   Date _12/16/2021_   Seller __DPGT (DS)__   Date _12/29/2021 | 2:37 PM CST_
           Buyer _____   Date _____   Seller _____   Date _____

# RE-13 COUNTER OFFER # 1 (One) (1,2,3 etc.)
## THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS

OCTOBER 2021 EDITION

THIS IS A LEGALLY BINDING CONTRACT, READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, **CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT** BEFORE SIGNING.

1. Today's Date: **December 29, 2021**
3. This is a COUNTER OFFER to the Purchase and Sale Agreement Dated: **12/16/2021**
5. ADDRESS: **1820, 1808 A/B Northwest Blvd, 1750 N. Pinewood Ct (4 Parcells)**  ID#: **20-20470**
7. BUYER: **providence Development, LLC**
9. SELLER: **David P. Gardner, Chp 7 Trustee, ID BK #20-20470**

11. The parties accept all of the terms and conditions in the above-designated Purchase and Sale Agreement with the following changes:
12. [X] **This is a SELLER counter offer.** The SELLER reserves the right to withdraw this offer or accept any other offers prior to the receipt of a true copy of signed acceptance of this Counter Offer within the time frame specified herein.
14. [ ] **This is a BUYER counter offer.** The undersigned BUYER reserves the right to withdraw this offer at any time prior to the receipt of a true copy of signed acceptance of this Counter Offer within the time frame specified herein.

17. **1.Sale of property is contingent upon Bankruptcy Court Approval.**

19. **2. Property is sold "as-is/where-is" without representations or warranties of any kind.**

21. **3. Property to remain marketed "pending court approval". Seller reserves the right to conduct an auction; wherein the proposed sale shall be a stalking-horse, subject to higher and better offers.**

24. **4. Responsible Broker to be Bud Bolan, Keller Williams Realty Coeur d'Alene.**

26. **5. Feasibility Contingency period to not exceed 60 days. Closing to be within 15 days of removal of all contingencies.**

28. **6. Buyer and Seller agree to the late response of the original offer dated 12-16-2021**

40. To the extent the terms of this Counter Offer modify or conflict with any provisions of the Purchase and Sale Agreement including all prior Addendums, the terms in this Counter Offer shall control. **All other terms of the Purchase and Sale Agreement including all prior Addendums not modified by this Counter Offer shall remain the same.** Buyer and Seller acknowledge the down payment and/or loan amount on Page 1 of Purchase & Sale Agreement may change if purchase price is changed as part of this Counter Offer. If original offer has expired, has been revoked and/or acceptance is late, then mutual execution of this Agreement shall constitute consent to revive and retender the original offer. Upon its execution by both parties, this agreement is made an integral part of the aforementioned Agreement.

47. If a signed acceptance is not delivered on or before (date): **December 30, 2021** at **3** [ ] A.M. [X] P.M.
48. this Counter Offer shall be deemed to have expired.

50. DELIVERY: Delivery shall be to the agent/broker working with the maker of the Counter Offer in person, by mail, facsimile or electronic transmission of any signed original document, and retransmission of any signed original document. Retransmission of any signed facsimile or electronic transmission shall be deemed to be the same as delivery of an original.

SELLER: *David P. Gardner Trustee*   Date: 12/29/2021   Time: 2:37 PM CST   [ ] A.M. [ ] P.M.

SELLER: _____   Date: _____   Time: _____   [ ] A.M. [ ] P.M.

BUYER: *Bryan Klein*   Date: 12/30/2021   Time: 12:27PM MST   [ ] A.M. [ ] P.M.

BUYER: _____   Date: _____   Time: _____   [ ] A.M. [ ] P.M.

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

OCTOBER 2021 EDITION                    RE-13 COUNTER OFFER                    Page 1 of 1

Serial#: 018235-500164-0807910
Prepared by: Kaye Mounsey | Keller Williams Realty Cda | Idahorealty@me.com | 2086672399

Form Simplicity